# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CR526DJS(MLM) |
| | ) | |
| RODNEY SHERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on defendant's Motion to Suppress Physical Evidence or, In the Alternative, Motion to Request <u>Franks</u> Hearing. [Doc. 21] The government responded to both Motions. [Docs. 23 and 26] On 1/4/08 the court took up the alternative Motion to Request a <u>Franks</u> Hearing and issued an Order granting the alternative Motion for a <u>Franks</u> Hearing. [Doc. 25][1] On 1/7/08 a lengthy combined <u>Franks</u> Hearing[2] and Hearing on the Motion to Suppress was held.[3]  Following the Hearing the parties requested and were granted additional time to file post-hearing briefs.  The government's brief is Doc. 31; the defendant's brief is Doc. 32; defendant's response to the government's brief is Doc. 37; the government's (second) response to the suppression motion is Doc. 38.

At the hearing on 1/7/08 the government presented the testimony of David Buehrle (a Police Officer with the City of O'Fallon, Missouri and one of the affiants in support of the search warrant) and Bruce Follmer (a Postal Inspector).  Defendant presented the

---

[1]      This Order (Doc. 25) is incorporated by reference as if fully set out herein.

[2]      <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

[3]      The transcript of this hearing has been filed. [Doc. 39]

testimony of Mark Henke (former Assistant Chief of Police in O'Fallon, Missouri), Shannon Vernieuw (an IRS Special Investigator), Lesley Schellert (former employee of Budget Towing and one of the affiants in support of the search warrant), Kurt Ponzar (a private investigator), Paula Briley Johnson (an employee of Budget Towing) and George Wells (an employee of Budget Towing). In rebuttal, the government re-called David Buehrle and presented the testimony of Richard Morrell (a Detective Sergeant with the O'Fallon Police Department).

There are two major issues before the court: first, was there a <u>Franks</u> violation? If so, can the affidavits be excised such that there is still probable cause even without the offending information? If there was no <u>Franks</u> violation, second, should the evidence seized pursuant to the Search Warrant be suppressed? Specifically, was there probable cause for the issuance of the Search Warrant and if so, was the Search Warrant in proper form and properly executed?

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.    Factual Background[4]

---

[4]    In order to give the district court a complete picture, it may be helpful to set out the background to the background. The Indictment in this case charges Rodney Sherman with 7 counts of tax fraud relating to federal income tax returns filed jointly with his wife as well as corporate income tax returns filed by him on behalf of Rodlin Enterprises, Inc. in which he engaged in business as Budget Towing. The tax years involved are 2002, 2003 and 2004. The Internal Revenue Service became directly involved in the case after officers of the City of O'Fallon, Missouri Police Department executed a search warrant at the Budget Towing business premises on 9/16/05. Officer David Buehrle was a long-time Police Officer with the O'Fallon Missouri Police Department. In August, 2005 he was detached to the office of Donna Morrow, the Mayor of O'Fallon. On or about 8/23/05 Mayor Morrow and another city official gave Officer Buehrle a letter which they had received from a citizen named Lesley Schellert in which Schellert accused her former employer, the defendant, of engaging in a series of questionable, if not illegal, business practices. The defendant operated Budget Towing which towed vehicles under contract with a variety of municipalities in St. Charles County. Included in Schellert's letter were allegations that defendant over-billed insurance companies on accident tows in violation of his contract with the City of

On 9/15/05 Associate Circuit Judge Terry Cundiff of the Circuit Court of St. Charles County issued a search warrant for the premises of Budget Towing at 425 N. Business Highway 61, Wentzville, Missouri owned by defendant Rodney Sherman. The application for the warrant was supported by two affidavits: one by PO David Buehrle of the O'Fallon Police Department and one by Lesley Schellert, a former employee of Budget Towing. Both Officer Buehrle and Schellert appeared before the judge.

Officer Buehrle's affidavit describes the premises with particularity and states his nineteen years of police experience. He states he was told by the Mayor and the City Administrator that Lesley Schellert had filed a written complaint against Budget Towing for fraudulent charging of insurance companies regarding tow billings. He contacted her and she gave him information about fraudulent activities that occurred while she was an employee of Budget Towing. He repeats her allegations as part of his affidavit and

---

O'Fallon and that over-billing included routine charges for cleanup fees when no cleanup occurred. The letter also states that defendant sold salvage vehicles for cash to a salvage yard without proper titles. Officer Buehrle sought guidance from the City Attorney of O'Fallon who informed him that the billings were allowed under the City's towing contract with Budget Towing. The City Attorney told Office Buehrle that the contract did not preclude Budget Towing from billing insurance companies for vehicles that were towed under the contract in amounts greater than the $15 flat fee that could be charged under the contract to an individual driver.

Officer Buehrle was provided a facsimile communication sent to Mayor Morrow from a tow service operator who had lost in the O'Fallon bid process to Budget Towing. This facsimile communication made further allegations about improper practices at Budget Towing.

Officer Buehrle attempted to corroborate the information by searching law enforcement data bases for criminal records of the employees at Budget Towing and he examined other available records including police reports. He also researched Schellert's background and determined that she had one prior arrest for a bad check in 1999 and further determined that the matter had been "nolle prossed".

Officer Buehrle met with Schellert and interviewed her regarding her allegations. The interview was tape recorded and a transcript of that interview was part of the record at the suppression hearing. Gov.Ex.16.

outlines his attempts to verify her statements. Lesley Schellert also submitted an affidavit and swore to its truthfulness before the issuing judge. He therefore had an opportunity to evaluate her credibility. She states in her affidavit that she was fired from Budget Towing for confronting defendant about his fraudulent charges to insurance companies. Her allegations include increased costs charged to insurance companies on tows resulting from accidents. She alleges she would include charges for fictitious use of winches, etc. All tows involving insurance companies would be charged a fictitious cleanup fee of $35 which would be placed under "miscellaneous" to avoid paying a percentage of the bill to tow drivers as well as additional mileage charges. She said frequently defendant sold vehicles without titles, some of which were sold to Larry Lowe's Salvage Yard; defendant received a $50 fee for each vehicle sold and gave $5 to the tow driver; and further that defendant pocketed, at the end of each day, all the cash received. She also said the defendant had access to all the business computers and was able to change the data.

## II. <u>Franks</u> Violation

Defendant challenges the affidavits on the grounds that the affiants intentionally or recklessly misled the judge by making affirmative false statements or by omitting material information that would affect the probable cause determination. In support of his motion for a <u>Franks</u> Hearing, defendant attached his own affidavit which he claims counters the allegations made by Schellert. The second attached affidavit is from Kurt Ponzar, a private investigator hired by defendant to look into Schellert's background. He alleges that Schellert is less than truthful and quick to make false allegations about other people and that he told Officer Buehrle the results of his background investigation of Schellert and his conclusion that she was not credible. In support of his claim of a

<u>Franks</u> violation, defendant challenges Schellert's allegation that a fictitious $35 miscellaneous fee for accident cleanup was added to tow bills involving insurance companies even though such cleanup was not done; second, he challenges her claims that Budget Towing sold vehicles without titles for $50 each to Larry Lowe's Salvage Yard. Third, he challenges her claim that cash receipts were destroyed so that cash intake could not be tracked.

### A.    The Cleanup Fee

Defendant takes great issue with the fact that Officer Buehrle thought the cleanup fee was only for cleaning up debris off of the roadway. However, regardless of what type of cleanup he corroborated, what Schellert actually said in her affidavit was:

> 5.    All tows involving insurance companies would also be charged a fictitious cleanup fee of $35. This fee would not be checked by the insurance companies and could not be tracked. Budget Towing Company would also charge additional mileage which could not be verified.

> 6.    This fictitious cleanup fee use [sic] to be added fraudulently to the actual tow of the vehicle but to prevent paying a percentage of the total bill to the tow drivers, it was moved to the miscellaneous field.

At the hearing, Schellert acknowledged that "cleanup" means more than just picking up debris off the roadway. It can also include cleaning debris and spilled fluids from tow trucks and from the garage. The fact that the roadway-type cleanup was the type corroborated by Officer Buehrle in no way affects the objective facts of Schellert's affidavit and testimony on the subject. She maintained and still maintains that cleanup fees were added in the miscellaneous column on tows involving insurance companies regardless of whether cleanup was done or not.[5]

---

[5]    Government's Exhibit 15 includes nine (9) written statements from Budget Towing employees which corroborate in whole or in part Schellert's affidavit and testimony. The two current Budget Towing employees who testified at the hearing attempted unsuccessfully to convince the court that their written statements were

Officer Buehrle attempted to corroborate the information given by Schellert by reviewing a tow bill relating to an accident that occurred on 9/4/05 which Schellert had received from an alderman in the City of O'Fallon. The tow bill reflected a $35 "miscellaneous" fee which is consistent with Schellert's description of how the cleanup fee would be included in the billing. In order to further corroborate the information, Officer Buehrle went to White Auto Body and took pictures of the vehicle that was in the accident. He also obtained the Police Report for the accident and contacted the driver of the vehicle who told him that she had not seen any cleanup activity occurring at the scene of the accident. He also reviewed police reports and found one relating to an accident occurring on 9/10/05. He contacted a citizen who told him that she did not see a Budget Towing driver engage in any cleanup work at the scene of the accident and further advised him that, in fact, a fireman who came to the scene actually cleaned up the debris at the scene of the accident. Officer Buehrle contacted insurance companies involved with the drivers of both vehicles in that particular accident in an effort to determine if cleanup fees had been charged. One of the companies confirmed the cleanup fee bill. Although he was awaiting a written second confirmation when he prepared the application papers, he received oral confirmation of the $35 miscellaneous fee from the insurance company prior to submission of the application papers to the Associate Circuit Judge.

Defendant's arguments that a lack of clarity about the cleanup fees somehow makes Schellert's affidavit constitutionally infirm is thoroughly without merit. Throughout his argument, defendant isolates each of Schellert's statements and by a process of "divide

coerced.

and conquer," he concludes her affidavit contains lies, misstatements and omissions such that it lacks probable cause. This is not the appropriate legal analysis.

Search warrants to be valid must be based on a finding by a neutral detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband or a person for whose arrest there is probable cause may be found in the place to be searched. <u>Johnson v. United States</u>, 333 U.S. 10 (1948); <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); Fed.R.Crim.P. 41. The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." <u>Gates</u>, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965). Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. <u>Gates</u>, 462 U.S. at 230. The duty of the reviewing judge "is simply to ensure that the [issuing judge] had a `substantial basis for . . . conclud[ing]' that probable cause existed." <u>Gates</u>, 462 U.S. at 238-39, <u>quoting Jones v. United States</u>, 362 U.S. 257, 271 (1960). Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. <u>Gates</u>, 462 U.S. at 236. The affidavits presented in the instant case clearly contain the "fair probability" that evidence, instrumentalities or fruits of a crime or contraband would be found at Budget Towing. The facts set out above show that there was a substantial basis for concluding that probable cause existed when the affidavits are read as a whole.

**B.      Vehicles Sold Without Titles**

Schellert's Affidavit states:

9.      I showed Officer Buehrle of the O'Fallon Police Department paper copies containing numerous vehicles which were sold to a salvage yard in Lincoln County identified as Larry Lowe's.  These vehicles were towed by Budget Towing at the request of the O'Fallon Police Department, Lake St. Louis Police Department, Wentzville Police Department and Missouri Highway Patrol.  These vehicles were subsequently sold without titles to make room for additional towed vehicles.

10.      These documents show that Rodney Sherman had been paid during the time frame of April, 2002 - June, 2004 for several vehicles sold to Larry Lowe's.  Not all of these vehicles contained titles but were sold anyway to this salvage yard for $50 each.  Rodney Sherman was not concerned about the owners ever complaining because the vehicles had been stored for several months and the storage fees could never be covered.  The owners would just leave the cars and never further inquire.

11.      Rodney Sherman received $50 per sold vehicle in cash only and Rodney Sherman would give $5 in cash to each tow driver who would tow the vehicles to the salvage yard in Lincoln County.

At the hearing it became obvious that there was some confusion about the storage lot and the sale of vehicles.  The court attempted to clarify and it appears that defendant had an excess storage lot at Larry Lowe's where he stored cars.  Apparently these cars did not have titles when they were stored.  Schellert maintains they were "sold" not "stored"; but she confirmed in her testimony that eventually each car was matched with a title. Defendant's self-serving affidavit (Doc. 22) implies, and the argument raised by counsel in his post-hearing Memorandum of Law asserts, that Schellert "intentionally and/or recklessly withheld information from her affidavit [in support of the application for Search Warrant] thus making a relatively innocuous transaction appear to be somewhat questionable."  However, it is the defendant who misstates and misinterprets the information given by Schellert.  She told Officer Buehrle that defendant sold for cash vehicles left on his storage lot to a salvage yard owned by Larry Lowe when the vehicles

had not been re-titled for salvage. The self-serving explanation given by defendant states that if such sales occurred, it was "an inadvertent oversight". Affidavit of Rodney Sherman, Doc. 22 at ¶10. Defendant says he did not instruct Schellert or anyone else to do such a thing. Id. This certainly does not mean that it was not done or that Schellert lied or was reckless.

At the time of the application for search warrant, Officer Buehrle attempted to corroborate Schellert's allegations. On the issue of the sales of vehicles without titles, Officer Buehrle reviewed a series of Budget Towing documents relating to time frames in '02, '03 and '04 which contained extensive listings of vehicles, many of which were noted as "no title" vehicles. Schellert identified some margin notes on these pages as having been written by Sherman confirming that payment had been made for these vehicles. One of the notations in defendant's handwriting was "Larry has got these cars & paid us."

The after-the-fact explanation and defenses raised by defendant Sherman in no way invalidate Schellert's belief at the time of the application and affidavit in support of the Search Warrant that these were unlawful business practices at Budget Towing or Officer Buehrle's corroboration. To say these allegations were lies or were reckless is without basis in fact. See Transcript of Hearing ("Tr.") 37-39, 195-196, 203, 204; Gov.Ex.11.

C.      Destruction of Cash Receipts

Schellert alleged in her affidavit that cash receipts were destroyed so that cash intake could not be tracked. Defendant denied that cash receipts were shredded for this purpose. Doc. 22 at ¶9. However, in Schellert's initial interview with Officer Buehrle, she admitted that the towing business was a cash business and alleged that the cash

receipts were destroyed but that all the information was contained in "Tracker," the computer program that maintains the business records of Budget Towing. <u>See</u> Gov.Ex.16 at 29-30.

Again, in her testimony at the hearing she affirmed that the receipts were destroyed but that the records were in Tracker. (Tr. 183) Defendant maintains that this cannot amount to probable cause because the destruction of the cash receipts could only amount to wrongdoing if the receipts were destroyed so that the cash business could not be tracked. Again, defendant's divide and parse approach is not the legal standard. Schellert's affidavit and that of Officer Buehrle must be read as a whole to establish the fair probability that evidence, instrumentalities or fruits of a crime or contraband could be found at the Budget Towing address particularly in light of the fact that defendant could access Tracker and could change the data. The allegations of the destruction of the cash receipts does not amount to a lie or reckless misinformation. It is merely one part of the larger picture. As noted above, applications and affidavits should be read with common sense and not in a grudging hypertechnical fashion. <u>Ventresca</u>, 380 U.S. at 109. Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented. <u>Gates</u>, 462 U.S. at 230.

### D.     Schellert's Credibility in General

Not only does defendant make particular challenges to the three allegations set out above, he also attempts to attack Schellert's credibility generally. He challenges the dates of her employment and her job title. These minor misstatements are not significant and have nothing to do with probable cause. Defendant explains the apparent legitimacy of some of the business practices of which Schellert complains and in other instance claims his lack of knowledge or responsibility. He claims repeatedly that Schellert knew her

allegations were false.  He backs his explanations to every paragraph of Schellert's affidavit with concrete examples.  He describes derogatory fliers that Schellert passed out in neighboring areas where defendant had rental and investment property and where Budget Towing had commercial accounts.  The fliers made allegations about defendant's engaging in overcharging insurance companies in charging fictitious fees.  He presented testimony of a private investigator who testified he "discovered that she had a history of financial delinquency and bad credit, had troubles getting along with employers, had a tendency to be involved in litigations, and was accused by others of engaging in insurance fraud and filing false claims.  Ponzar affidavit, ¶5.  He explains each of these allegations in subsequent paragraphs, specifically her eviction for non-payment of rent, her being fired several times for inability to get along with people, her involvement in 15 court cases, the allegations by an ex-husband that she deliberately set fire to her vehicle to collect the insurance, her attempt to file a false adult abuse charge against Marilyn Gibson and another false complaint for assault against Troy Gibson.  He particularly notes that Schellert admitted distributing the derogatory fliers because she was angry and frustrated by her treatment at Budget Towing because "scheduling was unfair." These allegations against Schellert concerning her personal life may be considered but they are not dispositive.  Frequently an issuing judge relies to establish probable cause for a search warrant on a "confidential informant" - a person with numerous felony convictions and a desire to obtain favorable treatment from law enforcement, whose name is unknown to the judge and who does not appear and swear in person to the truth of his/her statement.  In this case Schellert's personal life is no more relevant than that. Here, Schellert presented herself to Judge Cundiff and swore to the truth of the information in her affidavit in his presence.  He had an opportunity to evaluate her

credibility and once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. <u>Gates</u>, 462 U.S. at 236. Defendant's efforts to besmirch Schellert's credibility by the testimony of the private investigator does not establish intentional or reckless falsehoods in her affidavit. <u>Franks</u>, 438 U.S. at 155-56. Officer Buehrle testified he did not recall that the information about Schellert given to him by Ponzar was as extensive and disparaging as Ponzar related. However, both before and after receiving the private investigator's information about Schellert, Officer Buehrle made efforts to corroborate her allegations. He attempted to resolve his concerns about her reliability as best he could.

## III. Conclusion Regarding a <u>Franks</u> Violation

> A facially valid warrant affidavit is constitutionally infirm if the defendant establishes that the affidavit includes deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause. <u>Franks v. Delaware</u>, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed. 2d 667 (1978). Omissions likewise can vitiate a warrant if the defendant proves "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second that the affidavit, if supplemented by the omitted information could not support a finding of probable cause.

<u>United States v. Ketzeback</u>, 358 F.3d 987, 990 (2004) <u>quoting</u> <u>United States v. Allen</u>, 279 F.3d 790, 795 (8th Cir. 2002)

The deliberate falsity or reckless disregard of the truth standards do not apply to non-governmental informants. <u>Franks</u>, 438 U.S. at 171-72. One could make the argument that the <u>Franks</u> test applies only to Officer Buehrle. In <u>United States v. Jones</u>, 208 F.3d 603, 607 (7th Cir. 2000) the court stated:

> [T]he fact the third party lied to the affiant, who in turn included the lies in a warrant affidavit does not constitute a <u>Franks</u> violation. A <u>Franks</u> violation occurs only if the affiant knew the third party was lying or if the affiant proceeded in reckless disregard of the truth. <u>Id.</u> at 607.

The Eighth Circuit has held there is no <u>Franks</u> violation if the confidential informant who provided allegedly false information was not a government agent or acting as a government agent. <u>United States v. Hollis</u>, 245 F.3d 671, 673-74 (8th Cir. 2001); <u>United States v. Baker</u>, 907 F.2d 53, 54 (8th Cir. 1990) ("The deliberate falsity or reckless disregard whose impeachment is permitted. . . is only that of the affiant, not of any non-governmental informant." <u>quoting</u> <u>Franks</u>, 438 U.S. at 171). Although Schellert is a non-governmental witness, she herself gave an affidavit. As noted above, "A facially valid warrant affidavit is constitutionally infirm if the defendant establishes that the affidavit includes deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause." <u>United States v. Ketzeback</u>, 358 F.3d 987, 990 (8th Cir. 2004). In the present case whether Schellert is regarded as a witness or as a non-governmental informant is a distinction without a difference because all the information in Schellert's affidavit is contained and repeated in Officer Buehrle's affidavit. Officer Buehrle's testimony confirms that he attempted to corroborate every category of information given to him by Schellert. He consulted the prosecuting attorney regarding his investigation and he reviewed the case files with the prosecuting attorney who assisted in the preparation of the affidavit and the Warrant itself. The court finds that it is clear that Officer Buehrle did not know or believe that Schellert was lying nor did he proceed in reckless disregard of the truth. <u>Jones</u>, 208 F.3d at 607. Neither the affidavit of Schellert nor of Officer Buehrle includes deliberate or reckless falsehoods or omits material information relative to the finding of probable cause.

The court granted defendant's Motion for a <u>Franks</u> Hearing on the record then before the court out of an abundance of caution. <u>See</u> Memorandum and Order, Doc. 25

at 6-8.[6]  Having heard testimony at extraordinary length, the court finds that there was no <u>Franks</u> violation.  The court's previous concerns that Officer Buehrle's disregard of the credibility issues raised against Schellert might have been reckless was not confirmed in the testimony at the hearing.  He corroborated her information as much as possible under the circumstances and clearly recognized that her personal life was no more relevant than that of a "CI" with numerous felony convictions.   Given the defendant's attacks on Schellert's credibility, it is to be noted that such matters are not critical to the statement of probable cause even when they involve an informant's "deal" or his criminal record.  <u>United States v. Williams</u>, 477 F.3d 554, 557 (8th Cir. 2007); <u>United States v. Ketzeback</u>, 358 F.3d 987, 991 (8th Cir. 2004) (A source's credibility is not an "independent requirement 'to be rigidly exacted in every case. . .'").  Attacks on an informant's credibility carry even less weight when they are premised on personal and domestic circumstances in an informant's life.  Schellert, while not as business-smart as defendant, did not intentionally or recklessly mislead the issuing judge.  She called it as she saw it; her innocent mistakes, if any, are insufficient to amount to a <u>Franks</u> violation.  The court has further considered that Schellert's statements are against her penal interest (she admitted participation in the criminal conduct) and notes

---

[6]     A defendant must satisfy two requirements to receive a <u>Franks</u> hearing:

> First, the defendant must make a substantial preliminary showing of an intentional or reckless falsehood in the Affidavit.  <u>Franks</u>, 438 U.S. at 155-156 [87 S.Ct. at 2676].  "The substantiality requirement is not lightly met."  <u>United States v. Wajda</u>, 810 F.2d 754, 759 (8th Cir.), <u>cert. denied</u>, 481 U.S. 1040 [107 S.Ct. 1981, 95 L.Ed. 2d 821] 1987.  "Allegations of negligence or innocent mistakes are insufficient."  <u>Franks</u>, 438 U.S. at 171 [98 S.Ct. at 2680].  Second, the allegedly false statements must be necessary to the finding of probable cause.  <u>Id</u>. at 156 [98 S.Ct. at 2677].

<u>United States v. Schenk</u>, 983 F.2d 876, 879-80 (8th Cir. 1993) <u>citing</u> <u>United States v. Curry</u>, 911 F.2d 72, 76 (8th Cir. 1990) <u>cert. denied</u>, 498 U.S. 1094 (1991).

that this lends credibility that might otherwise be lacking. <u>United States v. McAtee</u>, 481 F.3d 1099, 1103 (8th Cir. 2007). In addition, she gave "explicit and detailed description of alleged wrongdoing" which entitles her statements to greater weight than might otherwise be the case. <u>Id.</u>; <u>Ketzeback</u>, 348 F.3d at 991.

## IV.   Other Challenges to the Search Warrant

Having found no <u>Franks</u> violation, the court now takes up the issue of whether there is probable cause stated in the affidavits, whether the Warrant complied with the particularity requirement, whether there were other technical problems with the Warrant, whether the search exceeded the scope of the Warrant and whether the <u>Leon</u> good faith exception should apply.

### A.      Probable Cause

As stated above,  search warrants to be valid must be based on a finding by a neutral detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, contraband or a person for whose arrest there is probable cause may be found in the place to be searched. <u>Johnson v. United States</u>, 333 U.S. 10 (1948); <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); Fed.R.Crim.P. 41. The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983). Probable cause is "a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." <u>Gates</u>, 462 U.S. at 232. Applications and affidavits should be read with common sense and not in a grudging, hypertechnical fashion. <u>United States v. Ventresca</u>, 380 U.S. 102, 109 (1965). Information contained in applications and affidavits for search warrants must be

examined in the totality of the circumstances presented.  <u>Gates</u>, 462 U.S. at 230.  The duty of the reviewing judge "is simply to ensure that the [issuing judge] had a `substantial basis for . . . conclud[ing]' that probable cause existed."  <u>Gates</u>, 462 U.S. at 238-39, <u>quoting Jones v. United States</u>, 362 U.S. 257, 271 (1960).  Once a judicial officer has issued a warrant upon a finding of probable cause, that finding deserves great deference. <u>Gates</u>, 462 U.S. at 236.

The affidavit presented in the instant case clearly contains the "fair probability" that evidence, instrumentalities or fruits of a crime or contraband would be found at Budget Towing.  In the present case, there is clearly a substantial basis for concluding that probable cause existed.  Schellert's affidavit states that inflated tow expenses were routinely charged to insurance companies.  These charges included fictitious cleanup fees as well as false claims for winching and dolly expenses.  Officer Buehrle corroborated these allegations by examining two accidents occurring in September, 2005 immediately before the preparation of the warrant papers.  He confirmed through interviews with drivers of the vehicles that Budget Towing drivers do not do any cleanup at the scenes of accidents.  He further corroborated Schellert's allegations by examining tow bills from these accidents which reflected that the cleanup fees had, in fact, been charged to insurance companies.  All of these allegations are included in the affidavits.

With respect to the second challenged allegation in Schellert's affidavit which involved the sale for cash of salvage vehicles that were improperly titled, Schellert provided documented corroboration of those allegations in the papers that were ultimately submitted into evidence at the suppression hearing.

Schellert's third allegation in her affidavit challenged by defendant is that the defendant caused the destruction of documents relating to cash receipts at Budget

Towing and that he kept the cash in the safe in an office. The factual allegations taken together with the corroboration obtained by Officer Buehrle constitute detailed, specific and first-hand information concerning possible illegal activity at Budget Towing so as to permit a judicial officer to find probable cause for the issuance of a search warrant of those business premises.

While defendant now raises business defenses and credibility attacks, these are not pertinent to the issue of probable cause because the court has already found no <u>Franks</u> violation. Judge Cundiff was bound by the four corners of the application and affidavits presented to him. <u>United States v. Solomon</u>, 432 F.3d 824, 827 (8th Cir. 2005) (when issuing judge relies solely on supporting affidavit to issue warrant "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause"), <u>quoting</u> <u>United States v. Etheridge</u>, 165 F.3d 655, 656 (8th Cir. 1999), <u>quoting</u> <u>United States v. Gladney</u>, 48 F.3d 309, 312 (8th Cir. 1995); <u>United States v. Wells</u>, 347 F.3d 280, 286 (8th Cir. 2004) (when issuing court relies solely on an affidavit to determine whether probable cause exists, only the information found within the four corners of the affidavit may be considered by reviewing court). The application and affidavits contain probable cause.

### B.     The Particularity Requirement

A search warrant must describe with particularity the place to be searched and the things to be seized. U.S. Const. Amend. IV; Rule 41, Federal Rules of Criminal Procedure. Police officers executing a search warrant may search for and seize items described in the search warrant. They may also seize other items of evidence,

contraband or instrumentalities of a crime if discovered during the reasonable course of the search. <u>Warden v. Hayden</u>, 387 U.S. 294, 298-301 (1967); <u>United States v. Peterson</u>, 867 F.2d 1110, 1112-14 (8th Cir. 1989). The discovery of such other items need not be "inadvertent." <u>See</u> <u>Horton v. California</u>, 496 U.S. 128, 110 S.Ct. 2301, 2308-11 (1990).

The Fourth Amendment requires that search warrants describe the things to be seized with sufficient particularity to prevent a "general exploratory rummaging in a person's belongings." <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971). "The particularity requirement insures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." <u>Id.</u> The test is whether an executing officer reading the description in the warrant would reasonably know what items are to be seized. <u>United States v. Kimbrough</u>, 69 F.3d 723, 727 (5th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1157 (1996). "In circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the *types* of items to be seized." <u>Id.</u>

The degree of particularity required is flexible and may vary depending on the circumstances and the type of items involved. <u>United States v. Muckenthaler</u>, 584 F.2d 240, 245 (8th Cir. 1978). <u>See also</u> <u>United States v. Dennis</u>, 625 F.2d 782, 792 (8th Cir. 1980) (search warrant for "certain books and records (or items of evidence) relating to the extortionate credit transaction business" held valid). "[W]here the precise identity of goods cannot be ascertained at the time the warrant is issued naming only the generic class of items will suffice because less particularity can be reasonably expected than for goods (such as those stolen) whose exact identity is already known at the time of issuance." <u>Dennis</u>, 625 F.2d at 792, <u>quoting</u> <u>United States v. Johnson</u>, 541 F.2d 1311,

1314 (8th Cir. 1976); see also United States v. Coppage, 635 F.2d 683, 687 (8th Cir. 1980) (warrant found valid which authorized search for "books, records, chemical equipment, and personal papers relating to the manufacture and distribution of methamphetamine").

In the present case the Warrant authorizes the seizure of:

1. All documents, receipts, invoices, insurance billings, vehicle titles, salvage titles and other articles regarding tow bills from Budget Towing to private individuals, insurance companies and other tow service contractors. All documentation regarding the sale or transfer of motor vehicles with or without titles that had originally been towed by Budget Towing at the request of the O'Fallon Police Department, Wentzville Police Department, Lake St. Louis Police Department and the Missouri Highway Patrol.

2. Any and all electronic data processing and storage devices, computer and computer systems including central processing unit, internal peripheral storage devices such as fixed disks, internal hard disks, floppy disks and diskettes, tape drives and tapes, optical storage devices, or other memory storage devices, peripheral input/output devices related to communication devices such as modem; system documentation, operating logs, hand written notes in the computer area that could be a password, instruction booklet or other operational manuals for the computer system, and documentation to show any computer assigned or used by Budget Towing and it's [sic] employees, and to take photographs of the area surrounding the computer.

9/15/05 Search Warrant, Gov.Ex.1

This Warrant satisfies all reasonable requirements for business record searches. Although focusing on a wide range of business records, it is very specific as to the types of records to be seized, including materials reflecting "insurance billings," "tow bills," and the sale of motor vehicles with or without titles as well as computers and computerized records, all of which were referenced in the affidavits. The fact that the search produced the seizure of a large volume of records is consistent with the scope of the fraudulent business practices described in the affidavits. The probable cause establishes a business permeated with fraud. United States v. Mathison, 157 F.3d 541,

549 (8th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1089 (1999); <u>United States v. Kail</u>, 804 F.2d 441, 445-46 (8th Cir. 1986) (for use involving a scheme to defraud. . .a search warrant is sufficiently particular in its description of the items to be seized "if it is as specific as the circumstances and nature of activity under investigation permit." <u>citing</u> <u>United States v. Wuagneaux</u>, 683 F.2d 1343, 1349 (11th Cir. 1982, <u>cert. denied</u>, 464 U.S. 814 (1983)).

> The Supreme Court has stated:

> The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of a crime is in the suspect's possession.

<u>Andresen v. Maryland</u>, 427 U.S. 463, 480-81 n.10 (1976).

> In <u>United States v. Horn</u>, 187 F.3d 781 (8th Cir. 1999) defendant contended a search warrant failed to meet the particularity requirement. The Eighth Circuit stated:

> To satisfy the particularity requirement of the fourth amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized. <u>United States v. Strand</u>, 761 F.2d 449, 453 (8th Cir. 1985). The degree of specificity required will depend on the circumstances of the case and the type of items involved. <u>Id.</u> A warrant naming only a generic class of items may suffice if the individual goods to be seized cannot be more precisely identified at the time the warrant is issued. <u>United States v. Johnson</u>, 541 F.2d 1311, 1314 (8th Cir. 1976) (per curiam). "We have upheld warrants authorizing the seizure of "certain books and records. . .relating to the extortionate credit transaction business." <u>United States v. Dennis</u>, 625 F.2d 782, 792 (8th Cir. 1980), and of "any and all chemicals, . . . books, records, chemical equipment, and personal papers relating to the manufacture and distribution of methamphetamine and the purchase of component chemicals and equipment which are contraband and fruits and instrumentalities of the commission of a crime which is in violation of [a certain statute, identified by section and subsections]." <u>United States v. Coppage</u>, 635 F.2d 683, 687 (8th Cir. 1980).

<u>Horn</u>, 187 F.3d at 788.

The language in the instant warrant is sufficiently particular to prevent a general rummaging. "Even a warrant that describes the items to be seized in broader generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit." United States v. Hargus, 128 F.3d 1356, 1363 (10th Cir. 1997), cert. denied, 523 U.S. 1079 (1998), citing Davis v. Gregory, 111 F.3d 1472, 1478 (10th Cir. 1997) (internal quotations omitted).

In the context of the Fourth Amendment's particularity requirement, defendant also challenges technical issues relating to the Warrant such as the lack of description of the offense and the time frame. However, the Supreme Court has said that the Amendment specifies only two matters that the warrant must "particularly describe[d]": "the place to be searched" and "the persons or things to be seized." That language is decisive. United States v. Grubbs, 647 U.S. 90, 97 (2006).

The Warrant references Chapter 570 of the Missouri Revised Statutes which deals with Stealing and Related Offenses. However, when dealing with a complaint that a warrant failed to state the crime of which the defendant was suspected, the Eighth Circuit has specifically stated:

> The fourth amendment, however requires only that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized"; neither the fourth amendment nor our holdings required particularity with respect to the criminal activity suspected.

Horn, 187 F.3d at 787. The legal reference in the instant warrant is not significantly different than offense descriptions which have been found to conform with the broad notion of particularity. United States v. Stelten, 867 F.2d 446, 450 (8th Cir.); cert. denied, 493 U.S. 828 (1989) (warrant refers to "a conspiracy to defraud the government"); United States v. Dennis, 625 F.2d 782, 792 (8th Cir. 1980) ("extortionate

credit transaction business" including a statutory reference). Here, the reference to insurance billing, salvage titles and cash sales together with the statutory reference establish the context of the type of information for which probable cause was established.

With regard to the time frame, although not specifically stated in the Warrant, it is clear from all the cases dealing with seizure of business records that a statement of a specific time frame is not required. See Grubbs, 657 U.S. at 97. Officer Buehrle testified that he was guided by the Missouri three year statute of limitations as well as the federal five year statute (consistent with the invitation to postal inspectors to assist in the execution of the warrant). Where, as here, the officer swearing out the warrant is also the officer who heads the execution of the warrant, there is little danger that there would be a lack of understanding on the part of the executing officers as to the scope of materials to be seized. See e.g. Massachusetts v. Sheppard, 468 U.S. 981, 990 n.6 (1984)(where search warrant misidentified objects of the search but officer directing search knew what items were listed in the affidavit, the officers could reasonably rely on it).

Defendant's arguments regarding the particularity requirement fail. The Search Warrant in this case particularly describes the place to be searched and the property to be seized. Horn, 187 F.3d at 788; United States v. Strand, 761 F.2d 449, 453 (8th Cir. 1985).

C.      Scope of the Warrant

Defendant also argues that the search exceeded the scope of the Warrant. He claims the executing officers seized items not specifically named in the Warrant, such as cash, safes, tax records and personnel records. Tr. at 41. He also claims that the

officers disregarded their own understanding of the time limits of the Search Warrant in that they took records that exceeded the five year statute of limitations.

There is no requirement that each item seized must be listed on the Search Warrant. See Mahlberg v. Mentzer, 968 F.2d 772, 775-76 (8th Cir.), cert. denied, 506 U.S. 1026 (1992). See also, United States v. Kimbrough, 69 F.3d 723, 727 (5th Cir. 1995), cert. denied, 517 U.S. 1157 (1996).

If evidence is illegally seized, the general rule is that "only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant." Hargus, 128 F.3d at 1363; United States v. $149,442.43 in U.S. Currency, 965 F.2d 868, 875 (10th Cir. 1992) (internal quotations omitted). Thus, a search is not invalidated merely because some things are seized that are not stated in the Warrant. This is particularly true when the non-specified items are not admitted into evidence against the defendant. Hargus, 128 F.3d at 1363; see United States v. Henson, 848 F.2d 1374, 1383 (6th Cir. 1988).

The full scope of the Warrant is set out above at page 18 of this R&R. There is no question that officers may seize other items of evidence, contraband or instrumentalities of crime if discovered during the reasonable course of the search. Warden v. Hayden, 387 U.S. 294, 298-301 (1967); United States v. Petersen, 867 F.2d 1110, 1112-14 (8th Cir. 1989). As noted, the discovery of such other items need not be inadvertent. See Horton v. California, 496 U.S. 128, 110 S.Ct. 2301, 2308-11 (1990).

The application and affidavits clearly delineated and focused on fraudulent business practices at Budget Towing. The challenged items not specifically enumerated were within the scope of the seizure authorized. The executing officers could not immediately or practically view each document or computer program at the search site.

"The fact that the executing officers chose not to review each video tape...and document on the premises does not make this search presumptively invalid." __United States v. Kimbrough__, 69 F.3d 723, 728 (5th Cir. 1995), __cert. denied__, 517 U.S. 1157 (1996).  The law makes accommodation for practical problems such as the seizure of numerous lengthy items that must be examined in detail.  __Id__.; __United States v. Lamb__, 945 F. Supp 441, 462 (N.D.N.Y. 1996)(time-consuming searches of videotapes, computer files and voluminous electronically-stored data need not be completed at the search site.)  __See__ __also__, __United States v. Santarelli__, 778 F.2d 609, 615-16 (11th Cir. 1985)(reasonable to remove documents from search scene for examination elsewhere).

Schellert's affidavit specifically encompasses criminal conduct with respect to insurance billings in '03 and '04 and Officer Buehrle's corroboration includes up to the time of the search in September, '05.  Schellert's affidavit also refers to improper sales of salvage vehicles for cash in time frames covered by documents provided to her showing the time frame '02 through '04.  The tax charges at issue in the Indictment in this case involve the years 2002, 2003, and 2004.  All of those time frames are covered by specific information provided as probable cause by Schellert and the reasonable inferences to be drawn from her information are that the activities she described were on-going business practices at Budget Towing predating her arrival in 2003.  In addition, the facts supporting probable cause in the application and affidavits include the Tracker computer system which contains the most comprehensive record of the day-to-day operations at Budget Towing.  The Tracker system included records of payments including insurance receipts and cash payments.  The tow bills and receipts fall clearly within the scope of the Warrant as does the cash seized and, as Officer Buehrle pointed

out, even the tax records in as much as they reflect Rodney Sherman's ownership of and responsibility for the business.

There was clearly no flagrant disregard for the terms of the Warrant.  <u>Hargus</u>, 128 F.3d 1358, 1363.[7]  The executing officers did not exceed the scope of the warrant.

### D.    The <u>Leon</u> Good Faith Exception to the Exclusionary Rule

Even if the district court should find deficiency in compliance with the particularity requirement or that the search exceeded the scope of the Warrant or should find that there was not probable cause for the issuance of the warrant, the "good faith" exception to the exclusionary rule should apply in this case.  <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984).  <u>Massachusetts v. Shepherd</u>, 468 U.S. 981, 988 (1984) addresses the good faith issue in the specific context of the particularity requirement:

> The exclusionary rule is a judicially created remedy designed to deter future Fourth Amendment violations [<u>Arizona v. Evans</u>, 514 U.S. 1, 11 (1995)]; <u>Leon</u>, 468 U.S. at 906 [. . .] "As with any remedial device, the rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously served."  <u>Evans</u>, 14 U.S. at 11 [. . .] If applying the rule would not appreciably deter future violations, the rule does not apply. <u>Id</u>. In <u>Leon</u>, the court developed the "good faith" exception to the exclusionary rule. The court determined whether the exclusionary rule should apply when police officers search in objectively reasonable reliance on a search warrant, issued by a neutral judicial officer, that is later determined invalid.  <u>Evans</u>, 514 U.S. at 11 [. . .]

<u>United States v. Scroggins</u>, 361 F.3d 1075, 1083 (8th Cir. 2004).

"Nevertheless, reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause" and thus the Supreme Court has

---

[7]    It is to be noted that Fed.R.Crim.P. 41(g) provides for the return of property seized to a person aggrieved by an unlawful search and seizure.  However, the government maintains that to date no request for the return of any property has been made.  This could be construed as a tacit admission that the search and seizure was lawful.

concluded that the issuing judge's determination be given "great deference."[8]  United States v. Leon, 468 U.S. 897, 914 (1984), citing Spinelli v. United States, 393 U.S. 410, 419 (1969).  "Even if the warrant application was supported by more than a `bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances."  Leon, 468 U.S. at 915, citing Gates, 462 U.S. at 238-39.

In the present case, even if the district court should determine that there were insufficient facts set out in the affidavit and that the issuing judge relied on the "bare conclusions of others," Gates, 462 U.S. at 239, the evidence seized pursuant to the search of Budget Towing should not be suppressed.

The exclusionary rule is not designed to punish the errors of judges and magistrates.  Leon, 468 U.S. at 916.  The Supreme Court has clearly recognized that the prosecution should not be barred from using in its case-in-chief evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.  Leon, 468 U.S. at 900.

---

[8]  In assessing the deference to be accorded a magistrate's finding of probable cause, the Leon Court adopted a four-part test:  first, there may be an inquiry into the knowing or reckless falsity of the affidavit on which the determination was based.  Franks v. Delaware, 438 U.S. 154 (1978); second, there must be insistence that the magistrate perform his "neutral and detached" function and not serve as a rubber stamp for the police.  Aguilar v. Texas, 378 U.S. 108, 111 (1964); third, the warrant must be examined for facial deficiency, that is whether it is lacking in detail as to the place to be searched or the effects to be found; and fourth, the magistrate must have a substantial basis for the determination of the existence of probable cause.  Gates, 462 U.S. at 239.

Here, both Officer Buehrle and Schellert presented themselves to Judge Cundiff. A prosecuting attorney accompanied them. There is no allegation that Judge Cundiff abandoned his neutral and detached role.

"In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Leon, 468 U.S. at 926; United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995) (even if facts in affidavit did not give rise to probable cause, officers acted in good faith based on issuance of warrant and specific information contained therein), cert. denied, 516 U.S. 1139 (1996); United States v. Smith, 63 F.3d 766, 769 (8th Cir. 1995) (search warrant not facially invalid and contained sufficient facts that officers could have executed it with objective good faith reliance on probable cause determination of magistrate judge), cert. denied, 516 U.S. 1063 (1996); United States v. Skorniak, 59 F.3d 750, 754-55 (8th Cir.) (officers' reliance on magistrate's probable cause determination was objectively reasonable and evidence seized came within the good-faith exception to the exclusionary rule regardless of whether there was probable cause, given the affidavit's detailed information about the extensive investigation and defendant's failure to contend the officers did not act in reasonable good faith manner), cert. denied, 516 U.S. 980 (1995); United States v. Frangenberg, 15 F.3d 100, 103 (8th Cir.), cert. denied, 513 U.S. 856 (1994) (although whether the search warrant was supported by probable cause was open to serious debate, court took into account the knowledge that an officer in the searching officer's position would have possessed in evaluating objective reasonableness of officer's reliance).

The **Leon** "good faith" principle applies to warrants seeking business and financial records such as those at issue in this case. United States v. $92,422.57, 307 F.3d 137, 151-52 (3rd Cir. 2002); United States v. Stelten, 867 F.2d 446, 451 (8th Cir.) (even in overly broad warrants, courts need not exclude evidence seized by law enforcement officers acting in objectively reasonable reliance on a warrant issued by a neutral magistrate), cert. denied, 493 U.S. 828 (1989). Here, Officer Buehrle conducted his investigation and prepared the affidavits and the contents of the application and Search Warrant with the assistance of the St. Charles County Prosecutor. An officer's good faith is judged by whether the officer's reliance was "objectively reasonable." Leon, 468 U.S. at 919-20. Stated another way, the inquiry is whether a "'reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" Malley v. Briggs, 475 U.S. 335, 345 (1986) quoting Leon, 468 U.S. at 922 n. 23. In the present case the executing officers reasonably relied on the Search Warrant.

## IV. CONCLUSION

After an extensive hearing, at which the court observed the demeanor and evaluated the credibility of the witnesses and after careful examination of the parties' exhibits and arguments, the court finds there was not a Franks violation in this case. Thus, considering the application, affidavits and Search Warrant as a whole, the court further finds that there was probable cause to support the Warrant, the particularity requirement was not violated and the search did not exceed the scope of the Warrant. Even if the district court disagrees on any of these points, the Leon good faith exception should apply. The evidence seized pursuant to the 9/15/05 Search Warrant for the Budget Towing premises at 425 North Business Highway 61 in Wentzville, Missouri should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Physical Evidence be **DENIED**. [Doc. 21]


The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE


Dated this  27th  day of  August, 2008.