**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:07CR526-DJS |
| | ) | |
| **RODNEY E. SHERMAN,** | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Now before the Court is defendant Rodney Sherman's motion to suppress physical evidence [Doc. #21]. Defendant's motion was referred to United States Magistrate Judge Mary Ann Medler for a Report and Recommendation (R&R). On January 7, 2008, the Magistrate Judge held a combined <u>Franks</u> hearing and hearing on defendant's motion to suppress. On August 27, 2008, the Magistrate Judge filed her R&R, including findings of fact, recommending that the motion to suppress evidence be denied [Doc. #43]. On September 11, 2008, defendant filed objections to the R&R [Doc. #49].

On September 17, 2008, the Court orally overruled defendant's objections, adopted the Magistrate Judge's R&R, and denied defendant's motion to suppress. After making those determinations, the Court stated that it would issue a written order setting out more fully the Court's findings.

### Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), a district court gives de novo consideration to those portions of a report and recommendation to which objections are made. In order to trigger such review, however, the objections must be sufficiently specific, addressing particular findings or conclusions of the magistrate

judge or asserting specific allegations of error. See, e.g., Nabors v. United States, 929 F.2d 354, 355 (8th Cir. 1990); Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990); Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989) (citing Goney v. Clark, 749 F.2d 5, 7 (3d Cir. 1984)). "[P]roviding a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process." Goney, 749 F.2d at 7.

**Facts**

Defendant does not object to the factual findings of the Magistrate Judge. On September 15, 2005, Associate Circuit Judge Terry Cundiff of the Circuit Court of St. Charles County issued a search warrant for the premises of Budget Towing at 425 N. Business Highway 61, Wentzville, Missouri, owned by defendant Rodney Sherman. The application for the warrant was supported by two affidavits: one by PO David Buehrle of the O'Fallon Police Department, and the other by Lesley Schellert, a former employee of Budget Towing. Both Officer Buehrle and Ms. Schellert appeared before the judge.

Officer Buehrle's affidavit describes the premises with particularity and states his nineteen years of police experience. He states he was told by the Mayor and the City Administrator that Ms. Schellert had filed a written complaint against Budget Towing for fraudulent charging of insurance companies regarding tow billings. He contacted her and she gave him information about fraudulent activities that occurred while she was an employee of Budget Towing. He repeats her allegations as part of his affidavit and outlines his attempts to verify her statements.

Ms. Schellert also submitted an affidavit and swore to its

truthfulness before the issuing judge. He therefore had an opportunity to evaluate her credibility. She states in her affidavit that she was fired from Budget Towing for confronting defendant about his fraudulent charges to insurance companies. Her allegations include increased costs charged to insurance companies on tows resulting from accidents. She alleges that she would include charges for fictitious use of winches, etc., and that all tows involving insurance companies would be charged a fictitious clean-up fee of $35.00, which would be noted as a "miscellaneous" charge to avoid paying a percentage of the bill to tow drivers as well as additional mileage charges. She stated defendant frequently sold vehicles without titles, some of which were sold to Larry Lowe's Salvage Yard, and that defendant received a $50.00 fee for each vehicle sold and gave $5.00 to the tow driver. She further stated that defendant pocketed, at the end of each day, all the cash received, and that defendant had access to all the business computers and was able to change the data.

## Discussion

### **Franks** Violation

Defendant maintains that his motion to suppress should be granted because the affidavits submitted in support of the search warrant omitted information pertinent to a probable cause determination. In <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), the Supreme Court held that "a search warrant must be voided and the fruits of the search suppressed if a defendant proves by a preponderance of the evidence that (1) a law enforcement officer knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and (2)

without the false statement, the affidavit would not have established probable cause." United States v. Neal, 528 F.3d 1069, 1072 (8th Cir. 2008) (citing Franks, 438 U.S. at 155-56). "This rationale also applies to information that the affiant deliberately or with reckless disregard for the truth omits from the affidavit such that the affidavit is misleading and insufficient to establish probable cause had the omitted information been included." Id. (citing United States v. Jacobs, 986 F.2d 1231, 1234 (8th Cir. 1993)). Accordingly, to prevail on a Franks-violation claim, a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement in, or omitted a true statement from, his warrant affidavit. That defendant must then show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented. See United States v. Snyder, 511 F.3d 813, 816 (8th Cir. 2008).

Defendant objects to several of the Magistrate Judge's findings with regard to the alleged Franks violation. First, defendant objects to the Magistrate Judge's finding that there was no constitutional infirmity with Ms. Schellert's affidavit regarding the purportedly fictitious $35.00 clean-up fee being added to tow bills. Defendant argues that, although Officer Buehrle thought the clean-up fee was only for cleaning debris off the roadway, and that at no time did Ms. Schellert tell Officer Buehrle clean-up fees could be applied in a variety of other circumstances, in fact such a fee could be applied in a variety of other circumstances (such as cleaning up spilled fluids, or cleaning the truck or premises after a tow). Considering the variety of instances when a clean-up fee would be charged,

4

defendant argues it would be hard to imagine a tow that did not involve a clean-up fee. Defendant argues that the Magistrate Judge relied on a hyper-technical interpretation of the supporting affidavits and, when considering the totality of the circumstances, there are intentional and materially misleading averments.

Although defendant argues that a tow which included a legitimate clean-up fee represented the typical tow, rather than an exceptional situation, the plain language of Ms. Schellert's affidavit supports the issuance of the search warrant:

> 5. All tows involving insurance companies would also be charged a fictitious cleanup fee of $35. This fee would not be checked by the insurance companies and could not be tracked. Budget Towing Company would also charge additional mileage which could not be verified.
>
> 6. This fictitious cleanup fee use [sic] to be added fraudulently to the actual tow of the vehicle but to prevent paying a percentage of the total bill to the tow drivers, it was moved to the miscellaneous field.

Doc. #43, p. 5. Regardless of whether some (or most) customers are legitimately charged a fee for debris clean-up, spilled fluids, or cleaning the truck or premises after a tow, Ms. Schellert's averment and testimony is that such fees were added in the miscellaneous field and were fictitious.

Defendant also objects to the Magistrate Judge's conclusion with regard to the affidavit's averments regarding vehicles sold without titles. Ms. Schellert, in her affidavit, states:

> 9. I showed Officer Buehrle of the O'Fallon Police Department paper copies containing numerous vehicles which were sold to a salvage yard in Lincoln County identified as

5

          Larry Lowe's. These vehicles were towed by Budget Towing at the request of the O'Fallon Police Department, Lake St. Louis Police Department, Wentzville Police Department and Missouri Highway Patrol. These vehicles were subsequently sold without titles to make room for additional towed vehicles.

10. These documents show that Rodney Sherman had been paid during the time frame of April, 2002 - June, 2004 for several vehicles sold to Larry Lowe's. Not all of these vehicles contained titles but were sold anyway to this salvage yard for $50 each. Rodney Sherman was not concerned about the owners ever complaining because the vehicles had been stored for several months and the storage fees could never be covered. The owners would just leave the cars and never further inquire.

11. Rodney Sherman received $50 per sold vehicle in cash only and Rodney Sherman would give $5 in cash to each tow driver who would tow the vehicles to the salvage yard in Lincoln County.

Doc. #43, p. 8. Defendant argues that Ms. Schellert failed to disclose that Lowe's lot was used as an excess storage lot for Budget Towing, and that if her affidavit was supplemented with this information, there would not be sufficient probable cause to support the search warrant.

     Although Ms. Schellert confirmed at the suppression hearing that, eventually, each car was matched with a title, the fact remains that she told Officer Buehrle that defendant sold for cash vehicles left at Lowe's lot when the vehicles had not been re-titled for salvage. Further, as noted by the Magistrate Judge, Officer Buehrle attempted to corroborate Ms. Schellert's allegations, and reviewed a series of Budget Towing documents relating to time frames in 2002, 2003, and 2004 which contained

6

extensive listings of vehicles, many of which were noted as "no-title vehicles." Ms. Schellert identified some margin notes on these pages confirming that payment had been made for these vehicles as having been written by defendant.

Defendant also objects to the Magistrate Judge's conclusion that the allegations contained in Ms. Schellert's affidavit with respect to the destruction of cash receipts amounted to probable cause. Defendant argues that, even assuming the truth of Ms. Schellert's allegations, her affidavit could not provide a basis for probable cause because everything about Budget Towing's business was contained in its computer program (the "Tracker" program). That is, defendant argues that Ms. Schellert's and Officer Buehrle's averments regarding the destruction of cash receipts were materially misleading because neither averred that the records in Tracker were altered.

The Court notes that Ms. Schellert averred in her affidavit that: defendant either shreds the cash receipts or gives them to the office manager to be destroyed; <u>and</u> defendant has access to the computers as does the office manager and is able to change data including fictitious costs and billing. In light of this access to Tracker, the allegation of the destruction of the cash receipts does not amount to intentional or reckless misinformation.

Defendant argues that Ms. Schellert's credibility in general was suspect, and that the Magistrate Judge did not give sufficient weight to the credibility issues raised by defendant when conducing an analysis of the allegations made by Ms. Schellert. To wit, the Magistrate Judge notes in her R&R that Ms. Schellert had a history of financial delinquency, bad credit,

7

trouble getting along with employers, a tendency to be involved with litigations, and was accused by others of engaging in insurance fraud and filing false claims. However, the Magistrate Judge correctly states that frequently an issuing judge must rely on a confidential informant, a person with numerous felony convictions and a desire to obtain favorable treatment from law enforcement, whose name is unknown to the judge and who does not appear and swear in person to the truth of his or her statement. In this case, Ms. Schellert's personal life is no more relevant than that. Furthermore, in this case, Ms. Schellert appeared in person before the issuing judge, and swore to the truth of the information contained in her affidavit in his presence. As noted by the Magistrate Judge, the issuing judge therefore had an opportunity to evaluate and measure Ms. Schellert's credibility.

Finally, defendant argues that the Magistrate Judge erred in failing to address several issues raised by defendant concerning Officer Buehrle's investigation and credibility. Defendant argues that Officer Buehrle did not follow up with other officers who initially looked at the case, did not pursue various witness leads provided by Ms. Schellert, did not abide by the prosecutor's admonition to obtain three instances of alleged fraudulent conduct, and did not investigate Ms. Schellert's credibility. Defendant argues such behavior was clearly reckless.

Because suppression pursuant to <u>Franks</u> typically deals with reckless or intentional omissions from an <u>affidavit</u>, the Court is not convinced that Officer Buehrle's underlying <u>investigation</u> can provide a legal basis for suppression of evidence under <u>Franks</u>. <u>See</u> <u>United States v. Curtis</u>, 965 F.2d 610, 613 (8th Cir. 1992) ("Where a criminal defendant seeks suppression of evidence by

challenging the veracity of information contained in the warrant affidavit, the only relevant inquiry for the district court is whether the warrant affiant knowingly, deliberately or recklessly included false statements in the warrant affidavit.") (emphasis added) (citing Franks, 438 U.S. at 171). Nevertheless, even assuming that an officer's underlying investigation can serve as a basis for a Franks violation, both before and after receiving information about Ms. Schellert, Officer Buehrle made considerable efforts to corroborate her allegations and, in fact, did corroborate much of it. The Court finds that Officer Buehrle was not reckless and did not act in bad faith during his investigation.

The Court finds that, in this case, no law enforcement official deliberately or recklessly omitted a true statement from a warrant affidavit. Further, even if defendant could show a deliberate or reckless omission, the Court finds that, if the affidavits were to be supplemented with the omitted information, when the affidavits are read as a whole, there is a substantial basis for concluding that probable cause existed.

**Other Challenges to the Search Warrant**[1]

The next objection defendant raises to the Magistrate Judge's R&R concerns the conclusion that the search warrant in this case satisfied the particularity requirement with respect to the materials to be seized. "The Fourth Amendment requires that a search warrant describe with particularity the items to be seized and prohibits general, exploratory searches." United States v.

---

[1] The Court notes that defendant raises only general objections to the Magistrate Judge's findings with regard to probable cause. As noted above, such a general objections does not trigger a full de novo review. The Court has reviewed that portion of the Magistrate Judge's R&R, and finds it to be correct.

Dockter, 58 F.3d 1284, 1288 (8th Cir. 1995) (citing Andresen v. Maryland, 427 U.S. 463, 480 (1976)).

> The degree of specificity, however, depends on the circumstances and the types of items. In a scheme to defraud, a search warrant is sufficiently particular in its description of the items to be seized if it is as specific as the circumstances and nature of activity under investigation permit.

United States v. Henderson, 416 F.3d 686, 695 (8th Cir. 2005) (internal quotations omitted). When a search of a computer and other electronic equipment is authorized by a warrant,

> The requirement of particularity must be assessed in terms of practicality. As a practical matter, it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain items.

United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007). In Summage, the Eight Circuit Court of Appeals reviewed a search warrant that listed several items to be seized, including "all" video tapes and DVDs, "all" video and/or recording devices and equipment, and "computer(s)." Finding that "it was necessary to search a broad array of items for the relevant materials," the Eighth Circuit found that the warrant was "neither over-broad nor lacking in particularity." Id. at 1079-80.

In this case, the government's search warrant authorized seizure of:

> 1. All documents, receipts, invoices, insurance billings, vehicle titles, salvage titles and other articles regarding tow bills from Budget Towing to private individuals, insurance companies and other tow service contractors. All documentation regarding the sale or transfer of motor vehicles with or without titles that had originally been towed by Budget Towing at the request of the O'Fallon Police

>     Department, Wentzville Police Department, Lake
>     St. Louis Police Department and the Missouri
>     Highway Patrol.
>
>     2. Any and all electronic data processing
>     and storage devices, computer and computer
>     systems including central processing unit,
>     internal peripheral storage devices such as fixed
>     disks, internal hard disks, floppy disks and
>     diskettes, tape drives and tapes, optical storage
>     devices, or other memory storage devices,
>     peripheral input/output devices related to
>     communication devices such as modem; system
>     documentation, operating logs, hand written notes
>     in the computer area that could be a password,
>     instruction booklet or other operational manuals
>     for the computer system, and documentation to
>     show any computer assigned or used by Budget
>     Towing and it's [sic] employees, and to take
>     photographs of the area surrounding the computer.

Doc. #43, p. 19. Defendant argues that paragraph 2 of the warrant called for the seizure of all types of electronic or computer data, without any limitation whatsoever. However, given the cases cited by the Magistrate Judge, and the Eighth Circuit's decision in <u>Summage</u>, the Court finds that given the circumstances and the practical concerns associated with this case, the warrant was not lacking in particularity.

Defendant further objects to the Magistrate Judge's conclusion that the scope of the search did not exceed the warrant. Defendant argues, as an example, cash, tax records, and personnel records were all seized even though such items could not be classified under any stated category in the search warrant. However, there is no requirement that each item seized must be specifically listed on the search warrant. <u>Mahlberg v. Mentzer</u>, 968 F.2d 772, 775-76 (8th Cir. 1992) (finding that items not listed on the search warrant were lawfully seized when officer had reason

to believe such items were connected to criminal activity), cert. denied, 506 U.S. 1026 (1992). Considering the affidavits and the language of the warrant, and considering the nature of that which was alleged against Budget Towing (that is, allegations concerning Budget Towing's fraudulent business practices), the Court finds that the contested items fall within the categories specified in the warrant. In other words, cash, tax records, and personnel records may well be or contain evidence of the alleged fraudulent business practices. See United States v. Gamboa, 439 F.3d 796, 807 (8th Cir. 2006).

Defendant also states that there was no attempt to conduct the least intrusive search possible. However, as noted above, it is frequently difficult, and often times more intrusive to an individual's privacy, to perform an on-site review of certain items. This is particularly true when computers or large amounts of documents are involved, because an on-site search of such materials "could take many hours and perhaps days" and "would not only impose a significant and unjustified burden on police resources, it would also make the search more intrusive." United States v. Hill, 459 F.3d 966, 974-75 (9th Cir. 2006); see also United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999) ("As a practical matter, the seizure and subsequent off-premises search of the computer and all available disks was about the narrowest definable search and seizure reasonably likely to obtain the images."); United States v. Horn, 187 F.3d 781, 788 (8th Cir. 1999) (concluding that the officers could not practically view all the videos at the search site). Seizure and off-site analysis of the materials was, in this case, necessary.

Finally, defendant objects to the Magistrate Judge's

12

finding with regard to the Leon good-faith exception. Under the Leon good-faith exception, "evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007). Thus, if the officers acted in good-faith reliance on the warrant when they conducted the initial search of defendant's business, "then there is no need to visit the underlying question of probable cause." Id. (quoting United States v. Warford, 439 F.3d 836, 841 (8th Cir. 2006)).

> Leon identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

Id. at 431 (quoting United States v. Leon, 468 U.S. 897, 923 (1984)).

Defendant argues that the Leon good-faith exception does not apply if there is a Franks violation, if the warrant was facially deficient, or if Officer Buehrle did not take care in pursuing and executing the search warrant. Since this Court finds no Franks violation, finds that the warrant was not deficient on its face, and finds that Officer Buehrle was not reckless or acting in bad faith when conducting his investigation and executing the

13

search warrant, the Court will overrule defendant's objection with regard to the Magistrate Judge's Leon good-faith ruling.  Even if there were insufficient facts set out in the supporting affidavits and the issuing judge relied on the bare conclusions of others, the evidence seized pursuant to the search warrant of Budget Towing should not be suppressed.

For the above stated reasons,

**IT IS HEREBY ORDERED** that defendant's objections to the magistrate judge's report and recommendation [Doc. #49] are overruled.

**IT IS FURTHER ORDERED** that the magistrate judge's report and recommendation [Doc. #43] is accepted and adopted.

**IT IS FURTHER ORDERED** that defendant's motion to suppress physical evidence [Doc. #21] is denied.

Dated this  7th  day of October, 2008.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE